## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOSEPH T. HOWARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-2829** |
| | ) | **Judge Aleta A. Trauger** |
| **STATE OF TENNESSEE;** | ) | |
| **THE TENNESSEE DEPARTMENT OF** | ) | |
| **SAFETY & HOMELAND SECURITY;** | ) | |
| **and DAVID W. PURKEY, in his official** | ) | |
| **capacity as Commissioner of the** | ) | |
| **Tennessee Department of Safety &** | ) | |
| **Homeland Security,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court are cross motions for summary judgment. The State of Tennessee, the Tennessee Department of Safety & Homeland Security (the "Department"), and David W. Purkey, in his official capacity as Commissioner of the Department, (the "Commissioner") have filed a Motion for Summary Judgment (Docket No. 15), to which Joseph T. Howard has filed a Response in opposition (Docket No. 18), and the defendants have filed a Reply (Docket No. 21). Howard has filed a Motion for Summary Judgment (Docket No. 29), to which the defendants have filed a Response (Docket No. 36), and Howard has filed a Reply (Docket No. 37) and Supplemental Reply (Docket No. 38), to which the defendants have filed a Sur-Response (Docket No. 41). For the reasons stated herein, the defendants' motion will be granted and Howard's motion will be denied. Howard's outstanding Motion to Compel (Docket No. 24) will be denied as moot, and his claims will be dismissed with prejudice.

# I. BACKGROUND & PROCEDURAL HISTORY

This action arises from allegations that Howard, who relocated to Tennessee from Massachusetts in August of 2016, was unable to complete his Tennessee voter registration in time for the November 2016 federal election, despite his attempts to do so in accordance with the procedures required under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and implemented by the Department. Pursuant to preliminary relief granted by this court, Howard was able to vote in that election, and he is now a registered Tennessee voter. Although the immediate problem of Howard's lack of a Tennessee voter registration has been solved, he continues to seek declaratory and injunctive relief addressing what he identifies as deficiencies in Tennessee's voter registration procedures under the NVRA.

## A. "Motor Voter" in Tennessee

"In 1993, Congress passed the NVRA as a measure meant to 'reinforce the right of qualified citizens to vote.'" *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381 (6th Cir. 2008) (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997)). The NVRA reflects a determination by Congress that robust participation in federal elections requires, not just granting citizens the abstract right to vote, but "establish[ing] procedures that will increase the number of eligible citizens who register" to do so. 52 U.S.C. § 20501(b)(1); *see Miller*, 129 F.3d at 834–35 (recognizing that the NVRA is intended to combat "restrictive or prohibitively inconvenient voter registration requirements that discourage or even prevent qualified voters from registering and participating in elections"). To that end, "[t]he NVRA . . . requires states to take various steps to facilitate voter registration."[1] *Nat'l Coal. for Students with Disabilities v. Taft*, No. 2:00-CV-1300, 2002 WL 31409443, at *2 (S.D. Ohio Aug. 2, 2002).

---

[1] "Article I section 4 [of the Constitution] specifically grants Congress the authority to force states to alter their regulations regarding federal elections." *Miller*, 129 F.3d at 836.

Among the steps required is that the state establish a system pursuant to which "[e]ach State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration." 52 U.S.C. § 20504(a)(1). If the applicant is already registered to vote, the application must similarly serve as an opportunity to update that registration. 52 U.S.C. § 20504(a)(2). This requirement that applicants be allowed to register to vote or update their voter registration "by application made simultaneously with an application for a motor vehicle driver's license," 52 U.S.C.A. § 20503(a)(1), is known colloquially as the "motor voter" law. *See Bryanton v. Johnson*, 902 F. Supp. 2d 983, 993 n.8 (E.D. Mich. 2012).

In 2002, the United States Department of Justice filed suit against the State of Tennessee and several state departments and officials alleging violations of the NVRA. Among the allegations raised by the United States was that Tennessee had failed to "provide applications to register to vote simultaneously with applications for motor vehicle driver's licenses (including renewal applications)." *United States v. Tennessee*, Case No. 3:02-cv-00938, Docket No. 5 at 2 (M.D. Tenn. Oct. 15, 2002). As a result of that litigation, the United States and the Tennessee defendants entered into a Consent Decree pursuant to which the Department—as the agency charged with administering the state's driver's license scheme, Tenn. Code Ann.§ 55-50-201— was required to create and implement "a single simultaneous application process for voter registration and application for motor vehicle driver's license." *United States v. Tennessee*, Docket No. 5 at 10. The Department agreed to discontinue any practice of providing a voter registration application only upon the request of the Tennessee resident engaging in the relevant driver's license-related transaction. *Id.* The Consent Decree did, however, specifically permit the Department "to use separate forms for applications for a driver's license and voter registration,"

as long as the Department met the NVRA's requirements for doing so.[2] *Id.* at 11. By its own terms, the Consent Decree expired on August 1, 2005. *Id.* at 14. The case was closed shortly thereafter. *United States v. Tennessee*, Docket No. 13 (M.D. Tenn. Aug. 24, 2005).

Applications for the issuance or renewal of a Tennessee driver's license are made to the Department and reviewed by the Department's examiners. Tenn. Code Ann. §§ 55-50-321, -322, -338. The Department maintains a written policy setting forth how its examiners are to effect the NVRA's motor voter requirements as part of that application process. (Docket No. 31-4.) As had been permitted under the Consent Decree, the Department has promulgated one general form for driver's license applications and relies on a second form for individuals who are also seeking to register to vote. (Docket No. 31-3.) That general application form includes an item whereby the applicant is asked whether he wishes to pursue a simultaneous voter registration. (*Id.*) The Department's written procedure provides that, if the applicant has left this question blank, the driver's license examiner should ask the applicant about voter registration orally. (Docket No. 31-4, at 2.) If the applicant has indicated, either in the original form or orally, that he wishes to register to vote, the examiner is instructed to provide a computer-generated voter registration application for the applicant to complete. (*Id.* at 3.) Once the applicant completes the form and hands it in to the examiner, the examiner is to instruct the applicant that he is not yet registered to vote and that his registration will only be complete once his application is received and approved by the registrar of his county election commission. (*Id.*) Department offices are instructed to hand-deliver voter registration forms to the commission at least once per week, with faster turnaround time required closer to registration deadlines for elections. (*Id.* at 5, 7.)

---

[2] The NVRA expressly contemplates that a state may rely on a distinct "voter registration application portion" of the integrated application form, as long as that distinct voter registration section does not require the applicant to duplicate information he has already provided in applying for his driver's license. 52 U.S.C. § 20504(c)(2).

**B. Howard's Attempt to Register to Vote**

Howard moved to Tennessee on or around August 14, 2016. (Docket No. 19 ¶ 1.) As a new resident to the state, he was required to complete his driver's license application process in person, rather than purely online or via one of the Department's electronic kiosks. (*Id.* ¶ 9.) Tennessee's procedures allowed him to begin the process, however, by filling out an electronic application form on the Department website. (*Id.* ¶ 2.) That form included the question "Would you like to apply to register to vote or update your voter registration?", which Howard answered by checking the "Yes" box. (*Id.* ¶ 4.) After Howard completed his electronic application, he was required to print a hard copy to take to one of the Department's driver services centers. (*Id.* ¶ 9.) Howard's printed form reflected the fact that Howard had expressed a desire to register to vote, but, in accordance with the Department's policy, it did not yet include a fully completed voter registration section. (Docket No. 35 ¶ 8.)

On October 6, 2016, Howard took his application to the Department's Hart Lane Driver Services Center in Davidson County. (Docket No. 19 ¶ 10.) At the services center, Howard completed the steps necessary to obtain a Tennessee driver's license, and he says that he left believing that he had also registered to vote. (Docket No. 35 ¶ 12.) Howard says that, to the best of his recollection, the driver's license examiner who handled his transaction never gave him the required voter registration form in response to his desire, expressed on his printed driver's license form, to register to vote. The defendants concede, for the purposes of Howard's Motion for Summary Judgment, that he was not given the form at the services center. (*Id.* ¶ 9.)

When Howard received his Tennessee driver's license in the mail on October 26, 2016, it was accompanied by a fresh voter registration form. (Docket No. 19 ¶ 12; Docket No. 35 ¶ 13.)

This prompted Howard to suspect that he had not, in fact, been registered to vote based on his October 6, 2016 transaction—a fact that he confirmed by consulting an online database of registered voters. (Docket No. 35 ¶ 13.) His realization, however, came too late to register for the upcoming November 2016 election.

## C. Howard's NVRA Suit and Registration to Vote

The NVRA creates a private right of action for "[a] person who is aggrieved by a violation of this chapter." 52 U.S.C. § 20510(b)(1). On November 2, 2016, Howard filed suit under that provision, seeking injunctive relief that would require the defendants to alter their voter registration procedures, as well as attorney's fees and costs. (Docket No. 1 ¶ 30.) In his Complaint, Howard alleged the imminent injury of being unable to vote in the upcoming federal election. (*Id.* ¶ 2.) Howard also initially named as a defendant the Davidson County Election Commission (the "Commission") for the sole purpose of seeking emergency injunctive relief ordering the Commission to allow Howard to vote in the November 2016 election. (*Id.* ¶ 28.) To this end, at the same time as the Complaint was filed, Howard filed an Emergency Motion for Temporary Restraining Order. (Docket No. 2.)

On November 8, 2016, the court executed an Agreed Order, as jointly requested and agreed to by Howard and the Commission, pursuant to which the Commission was required to immediately register Howard to vote in the November 2016 election, and Howard voluntarily dismissed the Commission from the action and agreed not to seek any fees against the Commission. (Docket No. 8.) It is undisputed that, following the issuance of the TRO, the Commission registered Howard to vote and Howard voted in the November 2016 federal election. (Docket No. 19 ¶¶ 13–14.)

On May 26, 2017, the defendants filed a Motion for Summary Judgment (Docket No. 15) along with a number of supporting attachments, a Memorandum in Support (Docket No. 16), and a Statement of Undisputed Material Facts (Docket No. 17). The defendants argue that Howard's claims against the Department and the State of Tennessee, as well as any claim for nominal damages against Purkey, are barred by sovereign immunity and that Howard's remaining claims are barred either because he lacks standing to challenge the relevant policies or because his claims are moot. On June 16, 2017, Howard filed a Response in opposition (Docket No. 18), along with a Response to the defendants' Statement of Undisputed Material Facts (Docket No. 19), and the Declaration of Benjamin A. Gastel, attorney for Howard, with attached documents in support of Howard's opposition (Docket No. 20). On June 30, 2017, the defendants filed a Reply. (Docket No. 21.)

The Gastel Declaration includes, as exhibits, a number of documents that Howard offers as evidence that the facts of his case were part of a broader pattern or policy of the Department disregarding its motor voter obligations. (Docket No. 20-4 to -9.) These examples consist of a number of e-mail chains documenting problems related to Tennessee's motor voter system, including: a complaint that another member of the public had attempted to register to vote at the Hart Lane Driver Services Center but had been told that he could not do so because "they had already left with voter registrations and voter registration was now closed" (Docket No. 20-4 at 4); a complaint from a member of the public who received a motor voter form, despite records suggesting that he did not request one (Docket No. 20-5, at 2); a complaint from a member of the public, claiming that he tried to register to vote when he renewed his license, but his information was not transmitted to election authorities (Docket No. 20-6, at 4); a complaint from a member of the public about an experience with uncooperative driver's license examiners in Blount

County that ultimately caused her to miss the deadline to register to vote in an upcoming primary election (Docket No. 20-7 at 3); and an e-mail thread apparently describing some breakdown in procedures related to the Department's transmission of voter information to the Dyer County Election Commission (Docket No. 20-9 at 1–3).

On August 23, 2017, Howard filed a Motion for Summary Judgment (Docket No. 29), a Memorandum in Support (Docket No. 30), and a Statement of Undisputed Material Facts (Docket No. 31). Howard argues that he has established a straightforward failure to comply with the NVRA, entitling him to declaratory and injunctive relief calculated to bring the Department into compliance. On September 12, 2017, the defendants filed a Response in opposition (Docket No. 36), along with a Response to Howard's Statement of Undisputed Material Facts (Docket No. 35). Howard filed a Reply on September 20, 2017 (Docket No. 37), and a Supplemental Reply on September 22, 2017 (Docket No. 38), which were followed on September 26, 2017, by a Sur-Response by the defendants (Docket No. 41).

## II. LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, to win summary judgment as to his own claims, a moving plaintiff must

demonstrate that no genuine issue of material fact exists as to all essential elements of his claims. "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## III. ANALYSIS

### A. Standing

Article III of the Constitution gives the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A party seeking to invoke the court's jurisdiction must establish the necessary standing to sue before the court may consider the merits of that party's cause of action. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). A plaintiff is required to show standing to sue at each stage in the litigation. *Lujan*, 504 U.S. at 561–62. The standing inquiry invokes both constitutional and prudential limitations on federal court jurisdiction. *Id.* at 560; *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing under the Constitution, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61); *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These mandatory minimum constitutional requirements—commonly known as (1) injury-in-fact, (2) causation, and (3) redressability—apply in every case.

The Supreme Court has held that an alleged injury that is "a generalized grievance shared in substantially equal measure by all or a large class of citizens" does not constitute a specific injury-in-fact that warrants the exercise of a federal court's subject matter jurisdiction. *Warth*, 422 U.S. at 499. Thus, "a plaintiff raising only a generally available grievance about government . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state [an injury-in-fact sufficient to establish] an Article III case or controversy." *Lujan*, 504 U.S. at 573–74; *see also Allen v. Wright*, 468 U.S. 737, 751 (1984) (noting the general prohibition on a litigant's raising another person's legal rights and the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches of government); *Mass. v. Mellon*, 262 U.S. 447, 488 (1923) (noting that "standing cannot be predicated upon an injury the plaintiff suffers in some indefinite way in common with people generally"); *Tyler v. Judges of Court of Registration*, 179 U.S. 405, 406 (1900) ("Even in a proceeding which he prosecutes for the benefit of the public, the plaintiff must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens."); *Fialka–Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011) (observing that matters of public interest are the arena in which the federal court must be most vigilant about the "case or controversy" requirement) (citing Felix Frankfurter, A Note on Advisory Opinions,

37 Harv. L. Rev. 1002, 1007 (1924)); *Hooker v. Fed. Election Comm'n*, 21 F. App'x 402, 406 (6th Cir. 2001) (finding general claims regarding the election process to be an apt example of the type of general, non-concrete allegations that the Supreme Court adverted to in *Warth*); *Hooker v. Fed. Election Comm'n*, 92 F. Supp. 2d 740, 742–43 (M.D. Tenn. 2000) (citing *Warth* and noting that limitations on the litigation of generalized grievances are necessary because otherwise "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights"); *Hooker v. Sasser*, 893 F. Supp. 764, 767–68 (M.D. Tenn. 1995) (where alleged injuries were common to all state voters, finding that there was insufficient factual specificity to allow the court to make a decision and redress those injuries and that doing so would constitute interference with the legislative branch of government).

The defendants do not appear to dispute that, at least at the time Howard brought his Complaint, he had standing to challenge the lawfulness of officials' failure to effect his voter registration in accordance with the guarantees of the NVRA. Howard, however, does not seek merely to enjoin the defendants from making the precise mistakes that were made against him. Rather, he casts his suit as one to address the state's broader failure to honor the simultaneous registration requirement across a number of types of driver's license-related transactions. Accordingly, the court must make a determination of the scope of the challenge for which Howard possesses standing. The defendants challenge Howard's standing in two regards: first, they argue that Howard only had standing to challenge violations specifically tied to the state's procedures for in-person transactions and, therefore, that Howard lacks the standing to bring suit based on deficiencies in the state's online-only and electronic kiosk-only procedures; and

second, the defendants argue that Howard only has standing to challenge deprivations related to initial applications for driver's licenses, not driver's license renewals or changes of address.

Howard identifies two injuries that, he posits, are sufficient to give him standing in this case: (1) the relevant officials' failure to register him to vote; and (2) the procedural harm inflicted by the denial of his right to a simultaneous driver's license application and voter registration process. Both alleged injuries, however, are directly traceable to the same state action: the failure to properly administer the motor voter process during Howard's October 6, 2016 in-person transaction at the Hart Lane Driver Services Center. Although Howard identifies a number of alleged deficiencies in the Department's processing of driver's license transactions that are either performed purely online or purely at one of the Department's electronic kiosks, none of those alleged deficiencies is responsible for the injuries that differentiate Howard from a member of the general public. Howard's standing is limited to the state actions that are actually responsible for his concrete and particularized injury-in-fact. The defendants are therefore correct that he lacks standing to challenge the Department's online-only and kiosk-only procedures.

Howard's own briefing reflects this disconnection between the injury he suffered and the bulk of the policies he seeks to challenge. For example, in what is presumably an attempt to tie his case more closely into the state's online-only and kiosk-only procedures, Howard complains of the defendants' "consistent disregard of clear obligations under the NVRA—especially as they relate to remote transactions like [Howard's]." (Docket No. 30, at 2.) Howard's transaction, though, was not remote in any meaningful sense of the word. To the contrary, Howard concedes that, as a new Tennessee resident, he was required to complete his application in person. (Docket No. 19 ¶ 9.) His transaction was only "remote" in that he prepared the driver's license portion of

his application ahead of time and then took it to the Hart Lane Driver Services Center, where he presented the application and completed the process in person. Insofar as that transaction can be referred to as remote, it is remote in a markedly different way than a transaction performed via automated electronic systems either online or via a self-service kiosk.

Semantics aside, even Howard acknowledges that his challenges to the Department's online-only and kiosk-only procedures amount to allegations of "additional ways" the Department has violated motor voter requirements (Docket No. 30, at 5), distinct from the way it violated those requirements in his case. Howard attempts to blur the boundaries between his injury and these admittedly additional allegations by arguing that, "[o]n a macro-level, [Howard's] rights were violated because [the defendants] do not respect their mandate pursuant to the NVRA in a myriad of ways," and both Howard's injuries and the Department's additional violations arise from that same general disregard. (Docket No. 37 at 2.) Standing, however, arises out of the causal link between the challenged action and the plaintiff's particularized injury, meaning the injury that "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). While there may be "macro-level" concerns lurking behind that particularized injury, it is the causation of the individual, personal injury from which the plaintiff's challenge must arise. Because Howard's injury cannot be traced to any flaws in the Department's online-only or kiosk-only procedures, he does not have standing to challenge them.

Howard's injury also was not caused by the Department's procedures for processing changes of address.[3] The NVRA imposes one set of obligations with regard to driver's license

---

[3] In a declaration dated July 24, 2017, Howard states that he had, on the same day, completed an online change of address that he intended to affect both his driver's license and his voter registration. (Docket No. 31-6.) Because Howard's complaint alleges no injury related to this significantly later-occurring transaction, it is not an appropriate basis for Howard's claims in this case.

applications and renewals, 52 U.S.C. § 20504(a)–(c), and a similar but distinct obligation with regard to changes of address, 52 U.S.C. § 20504(d). The Department's alleged failure to comply with the former does not give Howard standing to challenge its compliance with the latter.

By the same token, however, the NVRA makes clear that it considers driver's license applications and renewals as essentially equivalent transactions for the purposes of assessing obligations under the NVRA's simultaneous registration regime. *See* 52 U.S.C. § 20504(a)(1) (referring to "[e]ach State motor vehicle driver's license application (including any renewal application"). The Department's own written procedure related to motor voter obligations for in-person transactions likewise treats transactions based on initial applications and those based on notices of renewal as giving rise to the same obligation. (Docket No. 31-4, at 2.) Howard's challenge to the Department's procedures for processing in-person applications, therefore, can be fairly construed to encompass in-person renewals as well. Howard accordingly has standing to challenge the Department's processing of new driver applications and any in-person renewals, but not any other aspects of its motor voter system.

## B. Mootness

The federal courts have an ongoing obligation under Article III to limit their jurisdiction to cases that may actually affect the rights of the litigants. *Coal. for Gov't Procurement v. Fed. Prison Indus.*, Inc., 365 F.3d 435, 458 (6th Cir. 2004) (citing *Sw. Williamson Cty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)). When, therefore, the issue presented by a case is "no longer 'live'" or when "the parties lack a legally cognizable interest in the outcome," the case becomes moot and falls outside the boundaries of Article III. *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot

affect the matter at issue." *Cleveland Branch, Nat'l Ass'n for the Advancement of Colored People v. City of Parma, Ohio*, 263 F.3d 513, 530 (6th Cir. 2001) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). Thus, courts have a continuing duty to evaluate whether the claims before them are justiciable and must make the mootness inquiry at every stage of a case, regardless of whether the parties raise the mootness issue themselves. *See Slater*, 243 F.3d at 276.

"The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties . . . ." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)). Where a plaintiff seeks a declaratory judgment, a court making a mootness inquiry must evaluate "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); see also *Coal. for Gov't Procurement*, 365 F.3d at 459. Nevertheless, the "completion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given." *Coal. for Gov't Procurement*, 365 F.3d at 458 (citing *McPherson*, 119 F.3d at 458). As federal courts "possess broad discretion to fashion equitable remedies," they "may craft declaratory and injunctive relief designed to preclude a federal agency from acting in contravention of its statutory and regulatory authority." *Id.* at 460.

Because Howard has now been registered to vote, and the Department's policies already require its examiners to present a voter registration form to any similarly situated applicant, Howard's claim would seem, at first blush, to be moot. Howard first responds by arguing that the

injury he suffered was not merely the officials' failure to timely register him to vote, but also their violation of his procedural right to be registered in accordance with the NVRA. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient."). Even assuming that that purely procedural injury was sufficient to confer standing, though, it would make no difference to the court's mootness inquiry. The obstacle for considering Howard's claim is not that his injury was insufficient, but that it is no longer meaningfully redressable by the means of relief available to him. Howard has conceded that he cannot seek nominal damages based on his alleged procedural injury. Therefore, the only remedies available to him are injunctive and declaratory relief. Neither such form of relief, however, would address any ongoing controversy under which Howard and the defendants continue to have adverse legal interests.

Howard argues next that his claims are covered by the exception to mootness for cases where "the challenged activity is capable of repetition, yet evading review." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 370–71 (6th Cir. 2005)). That "exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 595–96 (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). "The party asserting the exception bears the burden of proof" of showing that it applies. *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016).

The Sixth Circuit has observed that "[c]hallenges to election laws quintessential[ly] evade review because the remedy sought is rendered impossible by the occurrence of the relevant

election." *In re: 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016) (quoting *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 452–53 (6th Cir. 2014)). As a result, the Sixth Circuit applies a "somewhat relaxed" inquiry with regard to whether an election-related case meets the requirements of the "capable of repetition, yet evading review" exception. *Id.* (quoting *Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 932 (6th Cir. 2013)).

Howard's challenge plainly meets the first prong of the "capable of repetition, yet evading review" test: that the challenged action be too short in its duration to be litigated fully prior to its cessation. Howard was only improperly kept off of the voter rolls for a short time. Even if the court had not granted him injunctive relief effecting his registration in time for the November 2016 election, he could have filed a fresh application that would have cured the initial failure to register him with regard to any future election, bringing on the same mootness concerns at issue here. Howard therefore could not reasonably have been expected to litigate his rights in the short time between the defendants' failure to register him and the point when he was, or reasonably could have become, registered.

The defendants instead dispute whether Howard satisfies the second prong of the test, whether he has a reasonable expectation that he will be subject to the same action again. Although a plaintiff seeking to establish a reasonable expectation of repetition is not required to show that the challenged action is "more probable than not" to happen to him again, *Barry*, 834 F.3d at 715 (citing *Lawrence*, 430 F.3d at 371), he must at least show some "demonstrated probability" of recurrence. *Demis v. Sniezek*, 558 F.3d 508, 516 (6th Cir. 2009) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). "[A] mere physical or theoretical possibility" is insufficient. *Resnick v. Patton*, 258 F. App'x 789, 793 (6th Cir. 2007) (quoting *Murphy*, 455 U.S. at 482).

Accordingly, a contextual assessment of the probability of the same situation arising again with regard to the same plaintiff is a necessary step in the court's analysis. *See, e.g.*, *In re: 2016 Primary Election*, 836 F.3d at 589 (noting that "it's easy to see the problem [giving rise to the case] arising again"); *Hagel*, 759 F.3d at 597 (noting that "this scenario will likely play out again between [the parties] in the future"); *United States v. Smart*, 406 F. App'x 14, 19 (6th Cir. 2010) (concluding that, in light of the specific conditions of the challenger's supervised release, he "has not demonstrated that there is a reasonable expectation that he will be subject to [the challenged action] again").

As a preliminary matter, in order to consider the likelihood that the state's "challenged action" is likely to be repeated, the court must define precisely what the "challenged action" is. *See In re: 2016 Primary Election*, 836 F.3d at 588–89 (noting that the likelihood of repetition depended in significant part on how broadly or narrowly the challenged action was defined). It is clear that, at the very least, the challenged action encompasses the Department's failure to furnish Howard with a voter registration form during his in-person driver's license transaction. Howard has also suggested, however, that the Department could have avoided any violation in his case by including a complete voter registration section in the electronic form that Howard filled out and printed in advance of his in-person transaction. This portion of Howard's argument raises the question of whether the relevant challenged action in this case might also include the composition of the preliminary electronic application form.

Ultimately, though, Howard's theory of liability based on the composition of the form is still subsidiary to his challenge based on the driver's license transaction itself. Howard's claim is premised on the Department's failure to establish procedures allowing his applications to be "made simultaneously." 52 U.S.C. § 20503(a)(1). Howard's driver's license application may

have been partially *prepared* before his October 26, 2016 trip to the driver services center, but the application was not *made* until Howard appeared in person to establish his entitlement to a driver's license, as, he concedes, he was required to do. (Docket No. 19 ¶ 9.) Nor can Howard expand the scope of the challenged action based on the statutory requirement that a voter registration application be "part of" the driver's license application, 52 U.S.C. § 20504(c)(1), because that provision expressly permits the use of distinct "portion[s]" of the application devoted, respectively, to the purposes of obtaining a driver's license and registering to vote, 52 U.S.C. § 20504(c)(2). By the time an in-person application was completed under the 2016 procedures, it fell within the boundaries of what was required, even if the voter registration portion was something of a late addition. Accordingly, the challenged action for which Howard must show a reasonable expectation of repetition is the Department's failure to include an opportunity to register to vote at some point before the conclusion of his in-person transaction— such as, for example, through compliance with the Department's own policies for doing so.

Although Howard is unlikely to need to repeat Tennessee's process for new driver's license applicants, his challenge, as the court holds *supra*, is broad enough to encompass in-person renewals as well. Accordingly, Howard can establish a reasonable expectation of repetition if he can show a demonstrated probability that he will face the same deprivation of his rights in a future driver's license renewal. Based on the evidence before the court, however, that possibility is entirely speculative. Howard—who came to Tennessee for the purpose of attending a Ph.D. program (Docket No. 35 ¶ 2)—might (or might not) remain in the state long enough to need to renew his driver's license, at which time he might (or might not) have undergone some change in his personal circumstances that would warrant updating his voter registration. He might (or might not) complete his driver's license renewal in person. (*See* Docket No. 30-3, at

112:20–113:13 (explaining process for online-only renewal); Docket No. 31-4, at 2 (setting forth motor voter procedures for in-person transactions based on a renewal notice).) Even then, though, the evidence available to the court suggests that the Department has, at worst, suffered a handful of arguably similar failures as part of its motor voter process, none of which suggests a systemic risk that the error with regard to Howard's application is likely to be repeated in any particular case. The overwhelming likelihood, then, is that Howard's hypothetical future motor voter transaction will be one where the examiner complies with the Department's relevant policies and the opportunity for simultaneous registration is afforded. It is, admittedly, conceivable that Howard's hypothetical future examiner might repeat the same error allegedly made in 2016, but the court cannot conclude that that risk of repetition amounts to more than a theoretical possibility. Howard accordingly cannot establish his entitlement to an exception to the mootness bar under the ordinary rules governing non-election cases.[4]

The Sixth Circuit, however, has held that the relaxed version of the mootness inquiry that governs election litigation may, in at least some cases, relieve the plaintiff of showing that he will personally face the same violation again, as long as there is a strong probability that someone else will. Most notably, in *Lawrence v. Blackwell*, the court wrote that, "[e]ven if the court could not reasonably expect that the controversy would recur with respect to [the plaintiffs], the fact that the controversy almost invariably will recur with respect to some future potential candidate or voter in Ohio is sufficient to meet the second prong because it is somewhat

---

[4] Howard urges the court to model its analysis on that used by the Middle District of North Carolina in *Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016). In that case, voters' NVRA claims were challenged as moot at the motion to dismiss stage, and the court rejected the argument because the plaintiffs had pled that they personally had a "substantial risk of suffering from the Defendants' non-compliance with the NVRA" in the future. *Id.* at 615. If Howard had demonstrated a "substantial risk" that he would be subject to the same NVRA violation again, he would indeed satisfy the second prong of the "capable of repetition, yet evading review" test. However. any likelihood of repetition with regard to Howard personally, based on the facts before the court, is decidedly remote.

relaxed in election cases." 430 F.3d at 372. Such an analysis remained sufficient, the court explained, "even when the nature of the [challenged] law made it clear that the plaintiff would not suffer the same harm in the future." *Id.* (citing *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972); *Honig v. Doe*, 484 U.S. 305, 335–36 (1988) (Scalia, J., dissenting)). The court echoed this formulation in *Libertarian Party of Michigan v. Johnson*:

> There is also a reasonable expectation that this controversy will recur, at least with respect to some other candidate and political party. We have previously allowed election law challenges to move forward even if the challenging parties do not have cognizable legal interests, because "the controversy almost invariably will recur with respect to some future potential candidate" and the standard for the second prong of the mootness exception is "somewhat relaxed in election cases."

714 F.3d at 932 (quoting & citing *Lawrence*, 430 F.3d at 372; *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006)).

The law of this Circuit, therefore, is that a voter or candidate plaintiff in an election-related case is not categorically required to satisfy the so-called "same-party requirement" that typically governs the second prong of determining whether an action was capable of repetition, yet evading review. *See Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 158 n.5 (6th Cir. 2010) (declining to extend *Lawrence*'s loosening of the "same-party requirement" to a non-election case). Nevertheless, in cases where the plaintiff has failed to satisfy this traditional route to overcoming mootness, the Sixth Circuit has appeared to apply a somewhat higher bar with regard to how likely the plaintiff must show recurrence to be. Specifically, a showing that the challenged action will "almost invariably . . . recur" with another party would seem to require a significantly higher likelihood than merely showing a "demonstrated probability" that the action will recur with regard to the plaintiff himself. As the court reads *Lawrence* and *Libertarian Party of Michigan*, then, a plaintiff in an election-related case who no longer has a

"cognizable legal interest" of his own in challenging the subject action may still meet the second prong of the "capable of repetition, yet evading review" test, but only by showing a high likelihood that similarly situated parties in the future will suffer the same harm that the plaintiff suffered.

*Lawrence* and *Libertarian Party of Michigan* both involved challenges to the defendants' adherence to the express laws and policies governing likely-to-arise election situations. *See Libertarian Party of Michigan*, 714 F.3d at 931 ("Johnson and the Libertarian Party of Michigan sought declaratory and injunctive relief . . . , asserting that the 'sore loser' statute . . . violated Johnson's First Amendment associational rights . . . ."); *Lawrence*, 430 F.3d at 369–70 ("Plaintiffs challenge an Ohio election statute which requires independent congressional candidates to file a statement of candidacy and nominating petition with a minimum number of signatures by the day before the primary election."). Some future party's eventual collision with those policies was therefore very likely, if not inevitable. Indeed, the Supreme Court's loosening of mootness-related requirements in election-related litigation appears to have been intended, at least in part, to reach that class of cases in which "the laws in question remain[ed] on the books," despite the plaintiff's own challenge having seemingly become moot. *Blumstein*, 405 U.S. at 333 n.2; *see Corrigan v. City of Newaygo*, 55 F.3d 1211, 1214 (6th Cir. 1995) (allowing challenge to ballot access provision to go forward because the case "resemble[d] *Blumstein* very closely"). This case, in contrast, presents the opposite situation: Howard's rights were violated in direct contravention of the Department's on-the-books policies. Any assumption that such a deprivation is bound to recur, therefore, would seem to be on significantly shakier ground. Accordingly, Howard must provide some factual basis on which the court can find a sufficiently high

likelihood of recurrence, such as by demonstrating systemically deficient procedures that would render repetition inevitable.

Again, Howard's eligibility for an exception to mootness runs afoul of the fact that he has, at most, shown a few isolated instances of other voters complaining of problems somewhat similar to his own. Any system as large as Tennessee's motor voter regime is likely to experience some errors, and a voter or prospective voter injured by such an error will, as a general rule, have the right to some form of judicial or administrative redress with regard to that person's own case. *See, e.g.*, 52 U.S.C. § 20510(b)(2) (authorizing private right of action under the NVRA if, after notice, the state's chief election official has not "corrected" the violation). A smattering of bureaucratic errors, however, where clerks fail to adhere to established procedures, does not grant every aggrieved person the right to litigate the fundamental sufficiency of the state's system even after his own injury has been fully addressed. While it may be possible for a future plaintiff to demonstrate that the problems that befell him are so widespread and unavoidable that it would justify an exception to the mootness doctrine, Howard has failed to do so here.

Howard's attempt to tie his claim into allegedly systemic failings is similarly unavailing, at least for the purpose of mootness. Most of the alleged systemic failures that Howard has identified as relevant to in-person applications involve the review and/or transmission of an applicant's information after that information has been received by the Department. (Docket No. 30, at 14.) No improvements on that process, however, would have prevented the violation in Howard's case, which had occurred by the time he left the service center. The only other relevant alleged systemic problem—the fact that Howard's printed pre-submission application did not include a full voter registration section—is, as the court has already discussed, merely a

subsidiary aspect of his claim based on his in-person transaction. That alleged defect is only relevant to the mootness inquiry insofar as there is evidence to suggest that it has rendered cases like Howard's almost invariably likely to reoccur. No such evidence has been presented.

Although Howard still has some outstanding discovery requests in this matter (Docket No. 24), the court, based on its review of those requests and Howard's representations in the telephone conference of August 22, 2017, does not find those requests to have a meaningful possibility of producing information that would cure either Howard's lack of standing to challenge online-only and kiosk-only transactions or the mootness of his claim regarding in-person applications and renewals.[5]

The court stresses that this ruling does not in any way reflect a determination, on the merits, that the state's procedures live up to its obligations under the NVRA, or that the kind of systemic violations that Howard has alleged with regard to online-only and kiosk-only transactions would not be subject to review in a suit brought by an appropriate plaintiff. Nor is this ruling a determination that the Department complied with the NVRA during Howard's own transactions. Indeed, the defendants' admissions for the purpose of summary judgment would seem to describe a straightforward, if perhaps isolated, violation of the motor voter law when Howard was not given a voter registration form before leaving the Hart Lane Driver Services Center. Rather, this ruling is merely a reaffirmation of the well-settled principle that a federal

---

[5] The court further notes that Howard has, at times, mentioned the possibility of future amendments to his Complaint that might remedy his standing and mootness problems. Specifically, he suggests that, "[t]o the extent this [c]ourt disagrees and believes that [Howard's] individual harm is insufficient to allow this [c]ourt to reach a ruling on the merits, the Tennessee Democratic Party stands ready to join this action as a co-Plaintiff or file one of its own." (Docket No. 37 at 10 n.6.) Howard also suggests that, if the court holds that he lacks standing to challenge the Department's change-of-address procedures, "a simple amendment to [the] complaint" to include his later-arising online change-of-address attempt "would suffice to cure any such pleading deficiencies." (Docket No. 30 at 19 n.13.) As Howard acknowledges, however, the deadline for amendments to his complaint has passed. (*Id.*) In any event, the court can only rule on the case presently before it.

district court is only permitted to review the lawfulness of a government action in the context of a live controversy brought by an appropriate plaintiff. Because that prerequisite is no longer met here, and Howard has failed to identify evidence sufficient to support an exception, the court will grant summary judgment to the defendants. Because the court lacks constitutional authority over this matter, it has no occasion to consider the defendants' arguments that the defendants other than the Commissioner are entitled to sovereign immunity.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment (Docket No. 15) will be granted, and Howard's Motion for Summary Judgment (Docket No. 29) will be denied. Howard's outstanding Motion to Compel (Docket No. 24) will be denied as moot, and his claims will be dismissed with prejudice.

An appropriate order will enter.

ENTER this 27th day of October 2017.

ALETA A. TRAUGER
United States District Judge